**Emanuel G. ROSENBLATT et al.,**
**Plaintiffs,**

v.

**NORTHWEST AIRLINES, INC., et al.,**
**Defendants.**

**No. 69 Civ. 5134.**

United States District Court,
S. D. New York.

Aug. 5, 1971.

Burton L. Knapp, New York City, for plaintiffs.

White & Case, New York City, for defendant Storer Broadcasting Co.; David Hartfield, Jr., Jeffrey A. Barist, New York City, of counsel.

Donovan, Leisure, Newton & Irvine, New York City, for defendant Northeast Airlines, Inc.; George S. Leisure, Jr., New York City, of counsel.

### OPINION

COOPER, District Judge.

Defendants Storer Broadcasting Company and Northeast Airlines, Inc. move for a protective order pursuant to Rule 26(c), F.R.Civ.P. directing that the deposition and discovery of Chase Manhattan Bank, N.A., a non-party, not be had by plaintiffs. The motion is denied.

The major claim presently at issue is whether concealment by the defendants of allegedly adverse information imparted to Chase constituted a manipulative and deceptive practice tending to induce the purchase or retention of Northeast stock at artificially inflated prices by minority shareholders deprived of this allegedly material information. See, e. g. *Stedman* complaint ¶¶ 12 and 21 and Count II, Defendants' Exhibit 2; *Witkoff* complaint, ¶¶ 13 and 17, Defendants' Exhibit 3; Knapp affidavit, July 14, 1971, ¶ 15, pp. 8–9. The discovery is relevant to the claim of deceptive and manipulative practices, Rule 26(b) (1), F.R.Civ.P.; the complaints provide fair notice of the claim. Rule 8(a), F.R. Civ.P.; 2A Moore's Federal Practice ¶ 8.13 at p. 1695.

■ Termination of the proposed merger between Northeast and Northwest does not moot the within claim [1] (neither do the denials of requests for preliminary injunctions). Rosenblatt v. Northwest Airlines, Inc., 435 F.2d 1121 (2d Cir. 1970) [Friendly, C. J.].

■ There is no banker-client privilege. The scope of the privilege doctrine is narrow indeed. "[T]he mere fact that a communication was made in express confidence, or in the implied confidence of a confidential relationship, does not create a privilege." VIII Wigmore on Evidence, § 2286, pp. 528–30 (1961); See Rule 501, Revised Draft of Proposed Rules of Evidence of the United States Courts and Magistrates, Committee on Rules of Practice and Procedure of the Judicial Conference of the United States (March, 1971).

Traditionally, several factors have determined whether communications are to be afforded a privilege:

"(1) The communications must originate in a *confidence* that they will not be disclosed.

(2) This element of *confidentiality must be essential* to the full and satisfactory maintenance of the relation between the parties.

---

1. Parenthetically we note there is not before us a motion to dismiss the complaints for mootness.

(3) The *relation* must be one which in the opinion of the community ought to be sedulously *fostered*.

(4) The *injury* that would inure to the relation by the disclosure of the communications must be *greater than the benefit* thereby gained for the correct disposal of the litigation."

Wigmore, supra, § 2285, at 527. While factor (1) applies here, disclosure will not destroy the maintenance of the relationship (factor (2)). The situation in factor (3) hardly resembles the husband-wife or attorney-client privilege. Our order shall limit any damage which could result under factor (4). In our view the balance tips decidedly in favor of discovery.

■ We see no analytical reason to raise an understandably confidential commercial situation of principal-agent or customer-banker to a privilege. The duties of confidentiality which a banker may owe a customer during their course of dealing do not overcome those duties of relevant disclosure which the customer and his bank may owe another litigant under the discovery rules. See Defendants' memorandum, p. 5, footnote. It is of significance that any qualified privilege afforded such personal records as income tax returns not relevant in litigation encourages the sound public policy of meeting a statutory duty of full initial disclosure to the Internal Revenue Service; a privilege for the information sought here would not further such a clear public policy or the interests of justice and is to be distinguished. Additionally, the information sought is relevant. *Compare* Wiesenberger v. W. E. Hutton & Co., 35 F.R.D. 556 (S.D. N.Y.1964); Cooper v. Hallgarten & Co., 34 F.R.D. 482 (S.D.N.Y.1964).

■ The analogy urged between trade secrets and "confidential * * * commercial information," Rule 26(c) (7), F.R.Civ.P., is not borne out. The events in question occurred over one (1) year ago; by defendants' own admission, mer-ger talks between Northeast and Northwest have long since terminated. Extensive inquiry was conducted of Northeast's activities by Northwest prior to the proposed merger. This is in sharp contrast to ordinary cases of claims of trade secrecy where it is of the essence that no disclosure be available to any competitors. See Knapp affidavit, ¶ 17, p. 9. We find no claim that a "secret process" akin to a patent will be disclosed by discovery, see 4 Moore's Federal Practice, ¶ 26.75, pp. 26–540–26–543, and we are not shown with sufficient particularity any facts to warrant us to conclude that "highly important technological matters," "developments" or "research"—other than merely privately financed research which defendants simply do not wish to share—cause a balance to be made in favor of secrecy. Moore's, supra, at p. 26–540. It is well-established that an attorney's affidavit which merely alleges that discovery will reveal even true secret formulae or trade secrets is insufficient to warrant a protective order. Sacks v. Frank H. Lee Co., 18 F.R.D. 500 (S.D.N.Y.1955); See also Nekrasoff v. United States Rubber Company, 27 F.Supp. 953 (S.D.N.Y.1939).

■ While the claim asserted does not rise to the dignity of a privilege guarded sensitively by law, the relationship and information derived therefrom which are at issue are to be respected and must not be trafficked in with indifference or needlessly invaded. Accordingly, we direct that no discovery of Chase shall take place until the action against Northeast's alleged competitor, Northwest, has been discontinued in accordance with the representation of plaintiffs' counsel to this Court. Knapp affidavit, ¶ 17, p. 9. It will therefore be unnecessary for the alleged Northeast competitor to be a party to any discovery in this action. Data obtained through the within discovery is to be used only for the preparation and actual prosecution of this action. Accordingly, plaintiffs, their counsel, personnel, agents, experts and others simi-

larly situated are not to reveal the contents of the documents or use the information contained therein for any other purpose. United States v. American Optical Company, 39 F.R.D. 580 (N.D.Cal. 1966); United States v. Lever Brothers Company, 193 F.Supp. 254 (S.D.N.Y. 1961).[2]

Defendants and Chase Manhattan Bank, N.A. are directed to furnish counsel for plaintiffs all originals and copies of books, records, loan agreements, correspondence and memoranda (including but not limited to all credit files and forecasts or projections) indicating the amount of operating losses of Northeast Airlines, Inc. between May 1, 1969 and November 11, 1969, inclusive, which are in the possession, custody and control of the bank. Proposed Revised Subpoena, July 15, 1971.

So ordered.

---

2. On the papers before us we are not satisfied that plaintiffs' attorney "regards discovery as a tool of harassment." Barist affidavit, July 12, 1971, p. 8; Knapp affidavit, ¶ 5, pp. 2–3. We additionally regard objections as to admissibility on a theory of hearsay as premature; the items sought, when it is known precisely what they are, may be unobjectionable.