Joseph D.B. KING, et al., Plaintiffs,

v.

E.F. HUTTON & COMPANY, INC. et al., Defendants.

Civ. A. No. 86–0211 JHG, ALB.

United States District Court,
District of Columbia.

Sept. 1, 1987.

**3**

MEMORANDUM OPINION
AND ORDER

ARTHUR L. BURNETT, SR., United States Magistrate.

On January 23, 1986 plaintiffs, Joseph D.B. King, as settlor of the Joseph D.B. King Trust, Robert G. Harper, as Trustee of the Joseph D.B. King Trust, Elizabeth Millen and Harry Millen filed a civil complaint in thirteen (13) counts alleging in rather extended detail in one hundred and fifty-five (155) separate paragraphs causes of action based on violations of Federal and local securities laws, the Racketeer Influenced and Corrupt Organizations Act (civil RICO) and certain asserted common law causes of action on the theory of pendent jurisdiction. The Federal securities law causes of action alleged violations of the Securities Exchange Act of 1934, Section 10(b), 15 U.S.C. § 78j(b), and SEC Rule 10b–5 with reference to the stockbrokers making false and misleading representations in connection with the trading in the King Trust Account and the Millen Accounts, violations of the Securities Exchange Act of 1934, Section 10(b), 15 U.S.C. § 78j(b), and SEC Rule 10b–5 through excessive trading, that is "churning" in the King Trust Account and the Millen Accounts, violation of the Securities Exchange Act of 1934, Section 20(a), 15 U.S.C. § 78t(a), as to defendants Perry H. Bacon and E.F. Hutton & Company, Inc. in their failing to supervise defendants Thomas K. Metz and Thomas H. Clark and to establish and enforce adequate internal rules and guidelines to prevent their violations of the Securities Exchange Act and in sharing in the profits from their wrongful conduct. The plaintiffs also asserted separately violation of the Federal Civil RICO provisions, 18 U.S.C. §§ 1962(a) and (c) and 1964(c). The pendent jurisdiction local and common law causes of action asserted consist of alleged violations of D.C.Code § 2–2613, the local Blue Sky law, common law fraud, breach of fiduciary duty, negligence and breach of contract.[1]

Irwin Borowski, Shaughnessy, Borowski & Gagner, Arthur M. Schwartzstein, Washington, D.C., for plaintiffs.

F. Joseph Warin, William M. Bumpers, Daniel T. Faherty, Kutak Rock & Campbell, Washington, D.C. for defendants.

1. By Opinion and Order, filed March 13, 1987, the Court (Joyce Hens Green, J.) denied the defendants' motion to dismiss all or a portion of the complaint, or alternatively, for a more defi-

Central to all of these causes of action are allegations by the plaintiffs that the defendants, Thomas K. Metz and Thomas H. Clark, made false representations to the plaintiffs with reference to their investment objectives in that the monies being invested with E.F. Hutton & Company, Inc. would be handled in a conservative and safe manner so as to protect the principal and to assure an annual return of fourteen (14) percent to seventeen (17) percent and that Thomas K. Metz had a record of success in managing other similar accounts in the past. Also at the heart of this case is the question of whether these were to be "discretionary" or "nondiscretionary" accounts in which transactions were to occur only on the explicit instructions of the investors, and whether there was excessive trading activities, contrary to the investors' objectives merely to generate substantial commissions for the brokers.[2] For an exceptionally instructive case as to the practice of "churning" and with contentions remarkably similar to those involved in this case as to investor objectives, see generally, *Miley v. Oppenheimer & Co., Inc.*, 637 F.2d 318 (5th Cir.1981). *See also Costello v. Oppenheimer & Co., Inc.*, 711 F.2d 1361 (7th Cir.1983).

Before the United States Magistrate at this time are two (2) principal discovery disputes, as to which the Magistrate held an extensive oral hearing on August 25, 1987. The first involves the defendants' motion to compel answers by the plaintiffs to the defendants' Second Set of Interrogatories with respect to—

—Information regarding the damages alleged in plaintiffs' complaint, and the amount of such damages;

—Information regarding how the alleged damages were attributable to the defendants' acts, and more particularly which defendants, and specifically as to what acts or omissions; and,

—Information regarding the dates on which each individual plaintiff became aware of the damages alleged.

The second motion is the plaintiffs' motion to compel answers to plaintiffs' First Set of Interrogatories and Request for Production of Documents. The defendants' counsel have described plaintiffs' motion to compel as arising from the defendants' objections to certain categories of interrogatories and documents requests, in the following manner:

—Documents created after plaintiffs filed this lawsuit and interrogatories regarding events occurring prior to plaintiffs' relationship with the defendants;

—Information regarding the defendants' current customers, former customers, or prospective customers, other than the plaintiffs;

—Information regarding other complaints, lawsuits or administrative actions involving the defendants;

—Information regarding the defendants' personal investments;

—Information regarding the basis for defendant, Thomas K. Metz's investment advice, recommendations and representations; and,

---

nite statement, except for one minor portion of Count VII, the civil RICO cause of action, which was dismissed as to the defendant, E.F. Hutton & Company, Inc. In that Opinion and Order the Court referred all subsequent discovery disputes to the undersigned United States Magistrate.

**2.** There remains a question as to whether the King Trust Account and the Millen Accounts causes of action should proceed to trial together. On July 14, 1987 the Court (Joyce Hens Green, J.) denied the defendants' motion to sever, concluding that the plaintiffs had, in their opposition, demonstrated sufficient common factual legal ground among their claims to permit joinder at this time, particularly as they

have all challenged the same type of trading activities in their respective accounts, a substantial part of which was undertaken at the same time, by the same person (Thomas K. Metz). The Court there specifically observed that the fact that plaintiffs were promised slightly different rates of return by different E.F. Hutton & Company, Inc. employees, allege different churning ratios in their accounts, and cannot demonstrate that their investments were identical in all respects, does not vitiate their claims of a common scheme or practice. This ruling was without prejudice to defendants' renewing their motion following the conclusion of all discovery and prior to trial.

—Information regarding the defendants' compliance with governmental and self-regulatory rules and regulations.

The Magistrate has now reviewed the motions, the parties' memoranda of points and authorities in support of, and in opposition to, the respective motions and has fully considered the arguments and representations of counsel made at the oral hearing of August 25, 1987, and will now proceed with formal rulings thereon.

### The Defendants' Motion to Compel Against the Plaintiffs

■ Counsel for the defendants seek to compel each of the plaintiffs to answer defendants' interrogatories Numbers 1–7 which generally ask plaintiffs to—

describe with particularity every loss suffered by plaintiff[s], as alleged in the Complaint, detailing each component of the loss, the amount of each component, how the amount was determined, to whom it is attributable, precisely how it is attributable to the acts of defendants, and what date plaintiff became aware of each component of the loss.

In responding to these interrogatories plaintiffs' counsel took the position that the details of how the plaintiffs determined their losses, to the extent of their knowledge, were adequately set forth in the complaint itself, and subsequently they have contended that the methodology for calculation of the plaintiffs' losses will be provided by the plaintiffs' contemplated expert witness. Further, counsel for the plaintiffs have described these interrogatories as contention interrogatories which need not be answered with completeness until a formal pretrial conference or even at a later time.[3]

In support of their motion to compel, counsel for the defendants observe, and appropriately so, that it is inconceivable that, after bringing the claims in this case, plaintiffs have objected to interrogatories requesting specific and detailed information as to the amounts of each loss, how those amounts were determined, how each loss is attributable to the acts of the defendants, and what dates each plaintiff became aware of each loss as "not reasonably calculated to lead to the discovery of admissible evidence." Indeed, it is the Magistrate's view, that while an expert on stock-broker operations and investments may be necessary to refine the evidence of their losses,[4] the plaintiffs must have had some factual basis for concluding they had sustained losses at the time the complaint was filed. Rule 11, F.R.Civ.P., requires no less. Rule 11 is designed to insure that allegations in a complaint, drafted by a member of the Bar, are supported by sufficient factual information at the time the claims are initially asserted. *City of Yorkers v. Otis Elevator Company*, 106 F.R.D. 524 (S.D.N.Y.1985). It is no answer for plaintiffs to assert that they will need discovery or to consult with an expert to determine their losses. They should have answered the interrogatories with such information as they then possessed, and pursuant to Rule 26(e), F.R.Civ.P. the plaintiffs have the option, indeed even the duty, to supplement their answers to these interrogatories to reflect refinements or corrections to the factual representations as to their asserted

---

**3.** There is also an intimation by counsel for the plaintiffs that answering contention interrogatories some how encroaches upon an attorney's work product. The Magistrate summarily rejects this suggestion, for in answering contention interrogatories the party is only giving the factual specifics which the party contends supports a claim, and this in no way impinges on the attorney's impressions or analysis as to how the attorney will endeavor to apply the law to the facts. If this elementary principle were not applicable, contention interrogatories would not exist. As the Advisory Committee Note reflects, as to requests for even opinions or contentions that call for the application of law to fact, they

are permissible and can be most useful in narrowing and sharpening the issues, which is the major purpose of discovery. See *Diversified Products Corp. v. Sports Center Co.*, 42 F.R.D. 3 (D.Md.1967); 4 Moore's Federal Practice ¶ 33.17 (2d ed. 1966), cited by the Advisory Committee.

**4.** While an expert may be helpful to the plaintiffs, the value of this expert's opinions will depend upon the facts upon which his opinions are predicated. For this reason, it is important to have the facts upon which the plaintiffs personally rely in claiming they had losses in order to test the factual basis for the expert's opinions.

losses up to the time of the final pretrial conference under Rule 16, F.R.Civ.P.

Nor is it an adequate response to say that the information is reflected in the complaint, no matter how detailed, especially where the complaint has not been verified under oath by the individual plaintiffs. Answers to interrogatories may be relied upon by the opposing party in connection with a motion for summary judgment,[5] can be used as affirmative evidence at trial, and certainly can be used for cross-examination and impeachment. Assertions in the complaint cannot be so used since they are merely the statements of counsel. Thus, even if the information in the complaint was adequate in its detail it could not fulfill the role of answers to interrogatories. But here the information in the complaint is not complete in the detail as requested by the interrogatories, nor will testimony of an expert on how the claimed losses have been calculated, fully answer the interrogatories, as they seek information personal to the plaintiffs themselves as to what dates each of them became aware of each loss, including how they concluded it was a loss and that it was due to the wrongful conduct of their stockbroker. This state of mind factor, the degree of sophistication of each of the plaintiffs in this case, each plaintiff's understanding of whether the accounts in issue were "discretionary" or "nondiscretionary" accounts, especially in view of their admissions that they received confirmation slips and monthly account statements and that they read and re-

viewed them, are all matters highly relevant to central issues in this case dealing with the applicability of the appropriate statute of limitations provisions, what misrepresentations, if any were made by the defendant stockbrokers, what did the plaintiff-investors know and when did they know it, and the credibility of the plaintiffs and their claims in this case.[6] A diligent effort by the plaintiffs to answer these interrogatories in the spirit of candor and cooperation mandated by the Federal Rules of Civil Procedure surely would have avoided the necessity for the defendants' motion to compel as to the plaintiffs' claimed losses. By filing this action and alleging damages, the plaintiffs have placed their theory behind each alleged loss squarely at issue. Their objections to the interrogatories were thus frivolous. Had counsel guided them to assemble the facts, including a thorough study of what documents and records they had in their possession or which were accessible to them, and assisted them to furnish answers in a point-by-point format to the interrogatories at issue, this discovery controversy could have been avoided.[7] *Cf. Thornton-Trump v. United States*, 12 Cl.Ct. 127, 131 (1987). It is not sufficient to now claim that the plaintiffs have been subjected to deposition, as their testimony was most general in nature with purported frequent representations of no present "recall." A studied and diligent effort to gather the required data and information adequately to respond to these interrogatories should lead to much more concrete and

---

5. Obtaining answers to contention interrogatories early on during the pretrial stage can expose a substantial basis for a motion under Rule 11 or Rule 56, and thus lead to an expeditious and inexpensive determination of a lawsuit, or can lead to an early settlement of a case where the plaintiff discloses a strong basis in support of his claim. See *In Re Convergent Technologies Securities Litigation*, 108 F.R.D. 328, 338 (N.D. Cal.1985).

6. Only the plaintiffs can furnish information as to their "personal knowledge." As to factors on which they will rely to establish losses, they shall be limited in their own personal testimony at trial to the information they have furnished in their depositions and will furnish in supplemental responses to the seven (7) interrogatories as herein Ordered. They personally will be

precluded from testifying at trial to any facts in support of the losses not mentioned in their respective depositions or answers to interrogatories.

7. The Magistrate does not find these interrogatories, as contended by the plaintiffs, to be "vague, confusing and overly broad." Indeed, they are quite "clear and specific." Compare the Court's characterization of very similar interrogatories in *Vietnam Veterans Foundation et al. v. Ellis E. Erdman*, No. 84–0940, slip opinion at 28 (D.D.C., Mar. 30, 1987) (Joyce Hens Green, J.) [Available on WESTLAW, DCT database]. The Magistrate concludes that these are well-tailored interrogatories properly addressed to the relevant issues concerning the details of the losses claimed in this case.

detailed information than furnished upon deposition, especially in a case of this type involving complex securities and financial transactions. The plaintiffs brought this lawsuit and can not properly complain of the burden which would be imposed upon them to give as detailed and as complete answers as now possible. Accordingly, the defendants' motion to compel will be GRANTED, and the plaintiffs shall file supplemental detailed and complete answers to Defendant's Second Set of Interrogatories, Interrogatories Numbers 1–7, no later than 4:00 p.m., September 9, 1987.[8]

### Plaintiffs' Motion to Compel Against the Defendants

■ In general, the scope of discovery allowed in a case must be governed by the nature of the litigation and the issues involved. Artificial restrictions should be rejected. Thus, the Magistrate rejects the defendants' objections to interrogatories and requests for production of documents solely on the basis that they pertain to events occurring prior to February 1, 1981, the approximate date of the alleged commencement of the relationship between plaintiffs and the defendants, and after January 23, 1986, the date of the filing of the complaint in this case. As plaintiffs assert, documents which bear a date after the filing of a complaint may relate to events occurring prior to the filing of the complaint bearing on the central issues in this case. Subsequent documents may reflect on events and statements occurring earlier which would bear on the intent of the defendant-stockbrokers in this case and the alleged falsity of their representations. Subsequent post-complaint documents and events may also be relevant to the claim of the failure of the defendant, Perry H. Bacon, and other management officials of E.F. Hutton & Company, Inc. to control and supervise defendants, Thomas K. Metz

and Thomas H. Clark. The civil RICO cause of action with reference to the "pattern" requirement, and the punitive damages claim, both may be proven, in part, by subsequent events and documents. The continuation of a course of conduct, involving false representations or other culpable wrongdoing after a complaint, may have evidentiary significance as to malice or reckless or wanton conduct justifying punitive damages.[9]

With reference to information concerning activities of the defendants, Thomas K. Metz and Thomas H. Clark, prior to February 1, 1981, it is obvious that the representations of past successes by the stockbrokers and their ability to obtain a rate of return of fourteen 14 percent or seventeen 17 percent make such information highly relevant to the issues in this case. The defendants, however, urge that such information, to the extent it will involve disclosures concerning other customers of these stockbrokers, would involve disclosing confidential information and invade these customers' privacy and reasonable expectation that the stockbrokers would not disclose private financial information to third parties.

To this objection, plaintiffs have responded that Rule 26(b)(1), F.R.Civ.P., provides that all relevant information that is not privileged is discoverable and that the term "not privileged" refers to privilege as that term is used in the law of evidence, citing *United States v. Reynolds*, 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727 (1953). They specifically refer to such privileges as husband-wife, physician-patient or attorney-client, arguing that there is no such privilege as a stockbroker-client privilege. By analogy they have noted that there is no federally recognized accountant-client privilege, citing *In re Fahey*, 300 F.2d 383 (6th Cir. 1961) and *F.D.I.C. v. Mercantile National*

---

8. Further, plaintiffs have represented that they will have an expert on the method of calculation of the plaintiffs' losses. Based on the representations at the hearing on August 25, 1987, and the colloquy with the Magistrate, counsel for the plaintiffs shall file a detailed and complete Rule 26(b)(4)(A)(i) statement no later than 4:00 p.m., September 4, 1987.

9. For an example of the standard as to the nature of conduct required justifying punitive damages in a churning case, see *Miley v. Oppenheimer & Company, Inc.*, 637 F.2d 318, 330 (5th Cir.1981).

*Bank of Chicago,* 84 F.R.D. 345 (N.D.Ill. 1979) among other authorities. They have also cited authority to the effect that there is no banker-client privilege, *Rosenblatt v. Northwest Airlines, Inc.,* 54 F.R.D. 21, 23 (S.D.N.Y.1971). It would appear to this Magistrate that the relationship between a stockbroker and his client should be no more sacrosanct than the relationship between a banker and a bank's depositor or client. The Magistrate is of the view that the rationale expressed by the Court in *Rosenblatt* is. equally applicable to the stockbroker-client relationship. There the Court stated:

> We see no analytical reason to raise an understandably confidential commercial situation of principal-agent or customer-banker to a privilege. The duties of confidentiality which a banker may owe a customer during their course of dealing do not overcome those duties of relevant disclosure which the customer and his bank may owe another litigant under the discovery rules.

54 F.R.D. at 23.[10] As suggested in *Rosenblatt,* the disclosure of such information, when required, may be subject to protective order provisions to preclude public dissemination and to assure its restricted usage only to the case at hand. This Magistrate has so ruled on a prior occasion. *See Hammerman v. Peacock,* 108 F.R.D. 66, 67–68 (D.D.C.1985). *See also Reed v. Smith, Barney & Company, Inc.,* 50 F.R.D. 128 (S.D.N.Y.1970). In this case, involving alleged misrepresentations made to plaintiff by a registered representative of a stock brokerage firm concerning the advisability of purchasing a certain stock, the brokerage firm and the representative were both ordered to respond to questions seeking the names of other customers who purchased stock during the same time period as the plaintiff. The Court expressly observed,

We cannot characterize plaintiff's attempt to discover whether Gardner [the registered representative] made similar "misrepresentations" to his other customers, and any additional information unearthed by such an inquiry, as irrelevant and devoid of the possibility of revealing admissible trial evidence.

*Id.* at 130. *Mallen v. Merrill Lynch Futures, Inc.,* 102 F.R.D. 801 (N.D.Ga.1984), relied upon by the defendants, is distinguishable as the Court there considered that there had not been a sufficient factual showing of relevancy of information in other customers' accounts, many of which were nondiscretionary accounts, where the trading activity "would not necessarily be based upon recommendations made by the defendants" and thus trading in these accounts would be irrelevant and would not be calculated to lead to discovery of admissible evidence. *Id.* at 802. That would not be the case here, if the discovery as to other clients' accounts were restricted to other discretionary accounts where the investors relied upon defendants, Thomas K. Metz and Thomas H. Clark, to whom they made representations of a fourteen (14) percent or seventeen (17) percent return on their investments, involving the same securities as were traded in the plaintiffs' accounts, and limited further to the options trading strategy as applied to the King and the Millen accounts, including the selling of puts and calls, the use of covered calls, and the use of index options. When these qualifying criteria are applied to limit the accounts to those with a close similarity to and with nearly identical characteristics as the accounts of the plaintiffs where the same investment objectives existed, then the relevancy becomes far stronger, sufficient to require disclosure subject to protective order requirements as hereinafter detailed.[11]

---

10. This principle is equally applicable today as it was when made in 1971. See *Delozier v. First National Bank of Gatlinburg,* 109 F.R.D. 161 (E.D.Tenn.1986); *Sneirson v. Chemical Bank,* 108 F.R.D. 159 (D.Del.1985). For application in a Federal criminal case, *also see United States v. Nelson,* 486 F.Supp. 464 (W.D.Mich.1980).

11. In the context of the "pattern" requirement of a civil RICO cause of action, the courts have clearly indicated the requirement for an allegation, and the need for discovery, of evidence that the stock brokerage firm and the broker: "had engaged in similar endeavors in the past or that they were engaged in other criminal activi-

Turning to the specific interrogatories in issue, the Magistrate concludes that the motion to compel should be granted, in part, and the scope of the interrogatories narrowed as hereinafter explicitly stated. With reference to Interrogatory Number 2, worded as follows:

Identify all trading by you or by any customer or client of yours in any of the securities which were traded in the plaintiffs' accounts or which utilized the options trading strategy used in the plaintiffs' accounts,

the defendants shall answer only as to "discretionary" accounts managed by defendants, Thomas K. Metz and Thomas H. Clark, for the period June 1, 1979 through December 31, 1985. with reference to Interrogatory Number 3, the defendants shall furnish a further detailed supplemental answer as to what specifically was done by the defendant, Perry H. Bacon, and other management officials of E.F. Hutton & Company, Inc. by way of meeting compliance procedures of governmental agencies and self-regulatory rules and regulation as applied to the King and the Millen accounts. Compare the discussion in *Aldrich v. Thomson McKinnon Securities, Inc.,* 756 F.2d 243, 247 (2d Cir.1985) concerning the corporate officers' initialling option trades in the plaintiff's account in clear violation of the firm's internal guidelines and their failure adequately to supervise

the account executive there involved, the appellate court concluding that if ever there was a case for the imposition of punitive damages against a brokerage firm and its employee, *Aldrich* was that case. Finally all defendants shall furnish a complete and detailed answer to Interrogatory Number 9, worded as follows:

Identify all civil or criminal litigation and arbitration proceedings to which you have been or are a party and all administrative or judicial investigations of which you have been or are subject, and identify each document which refers or relates in any way to any such litigation, arbitration proceeding or investigation.

The answer may, however, be limited to the defendants, Thomas K. Metz, Thomas H. Clark and Perry H. Bacon individually, and further limited to claims of alleged deception of customers, false representations to customers, and "churning" for the period of June 1, 1979 through December 31, 1985. *See, Miley v. Oppenheimer & Company, Inc.,* 637 F.2d 318, 337 n. 17 (5th Cir.1981). Such information is obviously relevant.[12] As for the remaining interrogatories at issue, the motion to compel as to Interrogatories Numbers 6 and 7 should be denied as imposing an inordinate burden on the defendants on matters which may yield information only of remote relevancy, if relevant at all.

ties." *Deviries v. Prudential-Bache Securities, Inc.,* 805 F.2d 326, 329 (8th Cir.1986). There the Court concluded that the allegations, if proven, at worst would show only one scheme to generate excessive sales commissions by recommending unsuitable investments and churning in Deviries' account, which was insufficient to state a RICO claim. The clear inference was that evidence of similar activities as to other customer accounts would be relevant to show more than one scheme sufficient to establish a "pattern". It appears that "to establish a true 'pattern' of related but distinct schemes of fraud", *Id.* at 329, evidence of activities as to other accounts and how they were handled would be highly relevant and discoverable to establish a civil RICO claim.

**12.** For a clear suggestion that evidence of the handling of other clients' accounts in the same "wasteful manner" as asserted by a plaintiff in a churning case may justify punitive damages on pendent common law causes of action of fraud

and breach of fiduciary duty, see *Aldrich v. Thomson McKinnon Securities, Inc.,* 756 F.2d 243, 248 (2d Cir.1985). *See also Torwest DBC, Inc. v. Dick,* 810 F.2d 925, 928–29 (10th Cir. 1987); *Roberts v. Smith Barney, Harris Upham & Co., Inc.,* 653 F.Supp. 406, 412 (D.Mass.1986) (Among the factors to be considered in deciding whether plaintiffs can establish continuing racketeering activity by Smith Barney are the number of independent victims of the alleged activity). In view of the unsettled state of the law as to the continuity or "pattern" requirement, any conscientious plaintiff's counsel would be prudent to endeavor to develop evidence during discovery revealing multiple victims. For a general discussion of the controversy as to what constitutes a "pattern" and the need for a stable definition, see Burnett, *Federal Civil RICO: Essential Reforms Necessary to Achieve Balanced Federalism Between Federal and State Courts and the Efficient Administration of Justice,* 33 Fed. Bar News & Journal 200, 205–06 (May-June, 1986).

Turning to the dispute over documents production, the Magistrate concludes that the motion to compel should be granted, in part, as hereinafter provided. Request Number 2 asked the defendants to produce—

Any documents concerning the hiring or employment by Hutton of Metz, Clark and Bacon, including any complaints made, disciplinary action taken or contemplated to be taken, or investigations made or commenced by Hutton or any other person concerning Metz, Clark or Bacon.

As worded this request is far too broad. However, the defendant E.F. Hutton & Company, Inc. shall comply with this request limited to documents dealing with complaints against defendant, Thomas K. Metz, Thomas H. Clark and Perry H. Bacon, for alleged deception of customers, false representations to customers, and for alleged churning activities during the period June 1, 1979 through December 31, 1985. As so limited the production would be relevant on issues of whether false representations were made, intent, notice, "pattern" or continuity of conduct, and the factual basis for punitive damages. Such production could also reveal documents highly relevant for use in cross-examination of the individual defendants should this case proceed to trial and as bearing on their credibility. The defendants shall also respond to Request Number 9 limited to investments made by the defendants, Thomas K. Metz, Thomas H. Clark and Perry H. Bacon, in their own personal accounts during the period February 1, 1981 through December 31, 1985, as their own investments may shed significant light on their intent and motives for the investments and trading activities in the plaintiffs' accounts at the same time. The defendants shall also produce all documents responsive to Request Number 10, limited to the time period of June 1, 1979 through December 31, 1985 and to "discretionary" accounts where they had the objectives of earning fourteen 14 percent to seventeen 17 percent and at the same time protecting the principal against loss. Finally, the defendants shall fully respond to Request

Number 15, to produce all documents concerning any litigation—civil or criminal—or any investigation, but limited only as applicable to the defendants, Thomas K. Metz, Thomas H. Clark and Perry H. Bacon, and their alleged individual conduct as to deception of customers, false representations to customers, or alleged churning activities. The motion to compel will, however, be denied as to Requests Numbers 4, 7 and 8 as being overbroad and as requesting documents of remote relevancy, if relevant at all.

It is the Magistrate's considered view that the foregoing rulings strike a balance between an appropriate scope of discovery for the plaintiffs to develop their case if they have one, but at the same time adequately protects the defendants from an open-ended fishing expedition with the hope of finding something which will intimidate the defendants into a substantial settlement of the case or put the defendants at substantial expense and diversion of resources to defend against serious allegations of fraud and misconduct. Allegations of securities fraud, the use of manipulative and deceptive devices or contrivances, and churning and of civil RICO violations with implications of alleged criminal conduct should not be lightly made by plaintiff-investors. In appropriate cases such plaintiffs may and should be subject to substantial Rule 11 sanctions. Yet securities firms and brokers can not resist responding to discovery requests reasonably directed to supporting allegations made on some factual basis. The Magistrate has made the rulings in this case sensitive to these competing considerations and has endeavored to exercise his discretion in a manner that strikes an appropriate balance between the competing interests of the plaintiffs and the defendants in this case.

*Recommendations to the Court*

The foregoing rulings indicate a need for an extension of the discovery completion date set by the Court of September 11, 1987. As a practical matter, due to the calendar demands on the Magistrate and counsel's request for oral argument, the

Magistrate was not able to resolve the substantial discovery disputes in this case until now. The defendants' compliance with the rulings of the Magistrate herein will reasonably require more than the time left between now and September 11, 1987. Further, the plaintiffs, as of August 25, 1987, had not definitely finalized their arrangements with a potential testifying expert and had not filed a detailed Rule 26(b)(4)(A)(i) statement or response to an interrogatory. They now have been ordered to do so by 4:00 p.m., September 4, 1987. The defendants should have a reasonable period of time to assess the plaintiffs' expert's qualifications and his opinions before furnishing any expert statement for a responsive expert. Even were they afforded ten (10) days for this purpose, this would take us to September 14, 1987. Further, it is the Magistrate's view that the defendants should reasonably be given thirty (30) days to comply with the rulings made herein by the Magistrate, which would require extension of the discovery completion date to at least September 30, 1987.

There is another factor which may warrant extension of the discovery completion date. Counsel on both sides of this litigation indicated to the Magistrate at the August 25, 1987 hearing that if the Court would delegate to the Magistrate the authority to conduct a settlement conference with the plaintiffs personally present and the defendants, Thomas K. Metz, Thomas H. Clark and Perry H. Bacon, also personally present for a thorough discussion of the merits of the case, pro and con, they would affirmatively recommend to their clients their participation in such a confer-

ence before the Magistrate.[13] If the Court wishes to so delegate this authority, this Magistrate can conduct such a conference during the week of September 21–25, 1987.[14] The defendants' counsel have indicated that they would wish to delay their compliance with the rulings herein, to avoid substantial additional expenses and utilization of resources until after a serious effort before the Magistrate has been made to settle the King and the Millen claims. With these objectives in mind, the Magistrate recommends extending the discovery completion date until October 9, 1987.

*Conclusion*

Based on the foregoing analyses of the discovery dispute issues in this case and in reliance on the judicial precedent cited and the reasons set forth, it is now hereby this 1st day of September, 1987,

ORDERED:

1. That each of the plaintiffs shall file supplemental answers to Defendants' Second Set of Interrogatories, Interrogatories Numbers 1–7, as required herein, no later than 4:00 p.m., September 9, 1987.

2. That the plaintiffs shall file a complete and detailed Rule 26(b)(4)(A)(i) statement as to their expert on each of the plaintiffs' losses, and as to other experts, if any, no later than 4:00 p.m., September 4, 1987.

3. That the defendants, E.F. Hutton & Company, Inc., Thomas K. Metz, Thomas H. Clark and Perry H. Bacon, shall file answers to interrogatories and respond to requests for production of documents as required herein no later than 4:00 p.m., September 30, 1987, unless the Court

---

**13.** For difficulties in determining the exact amount of losses, with due regard to general economic conditions prevailing at the time of the investments and investors' inattention to their own affairs, counsel may wish to consider *Aldrich v. Thomas McKinnon Securities, Inc.,* 756 F.2d 243, 249 (2d Cir.1985) and *Costello v. Oppenheimer & Co., Inc.,* 711 F.2d 1361, 1371–75 (7th Cir.1983) in determining their respective settlement postures in this case.

**14.** Such a settlement conference can take the form of a minitrial before the Magistrate with counsel on each side outlining their respective

cases as in opening statements to a jury and referring to appropriate deposition testimony and documentary evidence in presenting in oral narration each party's case in its best light, with the Magistrate asking probing questions and then giving an objective evaluation, pro and con, to assist the parties in arriving at a reasonable compromise and settlement. Patterned on the summary jury trial approach, such a proceeding need take only 3–4 hours. If effective, it can save the court a significant number of days of jury trial time in a complex securities fraud-civil RICO case.

(Joyce Hens Green, J.) enters a subsequent Order mandating a response in a shorter period of time, and any information furnished and/or documents produced, which the defendants conclude should be treated as "confidential" commercial and/or financial data, may be so marked and filed under seal in this case, and neither the plaintiffs nor their counsel shall disclose it publicly or to any one other than experts or others who may be called as witnesses in this case, should it go to trial, and at the conclusion of this case all copies of such materials labelled as "confidential" shall be returned to the defendant, E.F. Hutton & Company, Inc., or be destroyed under its supervision.

4. Should the Court approve the reference of this case to the Magistrate for an omnibus settlement conference in the form of a minitrial with the principals present, a subsequent Order will promptly issue for such a conference during the week of September 21–25, 1987 or as soon thereafter as all counsel and parties can be available.