**SOUTHWEST HIDE COMPANY**

v.

**Fred GOLDSTON, Panhandle Processing Co., Plains Processing Co., Inc., CHS Intercontinental Company, Wolverine Worldwide, Inc., Plains Processing Co., a General Partnership.**

No. CA–5–88–141–C.

United States District Court,
N.D. Texas,
Lubbock Division.

June 5, 1989.

John H. Lovell of Templeton & Garner, Amarillo, Tex., for plaintiff.

Dan M. Hurley, Lubbock, Tex., for Goldston, Panhandle Processing Co., Plains Processing Co., Inc., and Plains Processing Co., a General Partnership.

Floyd D. Holder, Lubbock, Tex., for Goldston.

A. Lee McLain, Houston, Tex., for CHS Intercontinental Co.

Jerry P. Jones of Thompson & Knight, Dallas, Tex., for Plains Processing Co., and Wolverine Worldwide, Inc.

ORDER WITH REGARD TO: (1) GOLDSTON'S MOTION FOR PROTECTIVE ORDER AS FILED APRIL 14, 1989, AND (2) PLAINTIFF'S MOTION TO COMPEL ANSWER TO SECOND SET OF INTERROGATORIES FILED APRIL 14, 1989

J.Q. WARNICK, Jr., United States Magistrate.

The above two (2) Motions were set for a Hearing on May 18, 1989. All interested parties appeared by attorney and announced ready.

The Defendants, Fred Goldston, Panhandle Processing Company, Inc., a Corporation, and Plains Processing Company, Inc., a Corporation, have filed a Motion for Protective Order. The Motion was filed on April 14, 1989. The Plaintiff has filed a Motion to Compel Answers to Plaintiff'

Second Set of Interrogatories. The Motion for Answers had been filed against Fred Goldston, individually, Panhandle Processing Company, Inc., a Corporation, Plains Processing Company, Inc., a Corporation, and Plains Processing Company, a partnership. Plaintiff announced at the beginning of the Hearing it had settled this Motion and claim with Plains Processing Company, a partnership. The Motion, therefore, was withdrawn with regard to Plains Processing Company, a partnership.

In effect, the issues to be determined in both Motions are the same. The Protective Order seeks protection from the Second Set of Interrogatories and for Production of Documents as sought by Southwest Hide. The Motion for Protective Order was likewise endorsed and joined in by the Defendant, Wolverine Worldwide, Inc.

The entire dispute has factually to do with an alleged check kiting scheme involving the First Security Bank of Utah. It is not denied the events in question occurred during August and September of 1988. Plaintiff's position is some of the Defendants, particularly Fred Goldston, individually, Panhandle Processing Company, Inc., a Corporation, and Plains Processing Company, Inc., a Corporation, were involved with two (2) companies, Salt Lake By–Products, Inc., and Golden Valley Packers in the check kiting scheme in August and September, 1988, involving the First Security Bank of Utah. Some of the details involved in the check matters came to light through bankruptcy proceedings in the Bankruptcy Court for the Northern District of Texas, Amarillo Division. Those are Bankruptcy Nos. 2–88–20510–11 where Amarillo By–Products, Inc., is the debtor, No. 2–88–20511–11, where the Debtor is Richard Jerome, No. 2–88–20512–11 where David Kennedy is the Debtor, and No. 2–88–20513–11 where Millard McAfee is the Debtor. The present lawsuit is a Civil RICO claim under 18 U.S.C. 1961, et seq.

There are three (3) stages in a Civil RICO claim that must be present to sustain a cause of action, 18 U.S.C. 1961, et seq. First, the Plaintiff must be able to show the Defendant engaged in one of the "predicate acts". Any predicate act must be an indictable criminal offense. If the pleadings are present showing predicate acts, then the next inquiry is whether or not there has been a "enterprise". Enterprise is when two (2) or more entities have joined together in some sort of a joint venture. Finally, the above two (2) factors being present, then there must be shown a "pattern" of racketeering activity. Perhaps, this is an over-simplification of the Statute, but basically it is the picture. The Plaintiff moves from predicate acts to an enterprise to a pattern of racketeering activity by the enterprise. The Statute provides the pattern of activity may take place within a ten (10) year period.

The basic thrust of the present claim of injuries is they occurred between 1982 and 1985, inclusively. Plaintiff now seeks to be able, through the technique of discovery, to inquire into an alleged check kiting scheme occurring during the calendar year 1988. This is an event which took place after the filing of the complaint.

Defendants' position is this is an attempt to take the Statute and make it work prospectively, when the Statute only works retrospectively.

Plaintiff's position with regard to the check kiting scheme is when considered from 1982, it would be included within the ten (10) year coverage period.

Plaintiff filed this civil RICO action in July, 1988. The suit claims the Defendants engaged in conduct violative of various RICO provisions inclusively between 1982 and 1985, which injured plaintiff. In August and September, 1988, the Defendants allegedly engaged in a check kiting scheme to defraud several financial institutions. The check kiting scheme did not directly involve or injure the Plaintiff, nor has the Plaintiff made it the basis of any claim.

Plaintiff has submitted various discovery requests to defendants in an attempt to discover the details of the check kiting scheme. Defendants have objected to these requests inter alia on grounds they seek information which is not relevant to this action. Defendants contend it is not relevant since it inquires into matters

which occurred after the plaintiff filed this suit. Plaintiff has responded to these objections by asserting the information regarding the check kiting scheme is relevant to the original RICO claim, because it will show the continuous and continued existence of an "enterprise" and a "pattern of racketeering activity."

Fed.R.Civ.P. 26(b)(1), which should be liberally construed, allows for discovery of information which is relevant to the subject matter of the pending action or which is calculated to lead to the discovery of admissible evidence. There is no *per se rule barring* discovery regarding events which occurred after the date the pending action was filed. Information pertaining to the subsequent check kiting scheme may tend to establish both the existence of a continuing "enterprise" and a "pattern of racketeering activity".

The Motions present two (2) threshold issues. The issues are (1) whether post-complaint conspiratorial acts are lacking in discovery relevance in a civil RICO action simply because they occurred after suit was filed; and (2) whether conspiratorial conduct which does not directly involve or injure a plaintiff can be relevant to elements of the plaintiff's own civil RICO claim?

The general scope of discovery is defined by Fed.R.Civ.P. 26(b)(1). Rule 26(b)(1) provides in pertinent part:

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action.... It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

The Supreme Court, in its most recent discussion of Rule 26(b)(1) noted, "[t]he key phrase in this definition—'relevant to the subject matter involved in the pending action'—has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v.*

*Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380, 2389, 57 L.Ed.2d 253 (1978). The term "relevant" should be interpreted "very broadly" to mean matter relevant to anything which is or may become an issue in the litigation, *id.,* at pg. 351, n. 12, 98 S.Ct. at pg. 2389, n. 12.

The scope of inquiry for purposes of discovery is broader than the test for admissibility at trial, *United States v. Wright Motor Co.,* 536 F.2d 1090, 1095 (5th Cir. 1976). Consistent with the Federal notice-pleading system discovery is not limited to issues raised by the pleadings. Discovery is designed to help define and clarify the issues, *Oppenheimer,* supra, 437 U.S at pg. 351, 98 S.Ct. at pg. 2389. Likewise, discovery is not limited to the merits of a case, because a variety of fact-oriented issues unrelated to the merits may arise during litigation, *id.* As the commentary to Rule 26(b)(1) notes, "[s]ince decisions as to relevance to the subject matter of the action are made for discovery purposes well in advance of trial, a flexible treatment of relevance is required and the making of discovery...is not a concession or determination of relevance for purposes of trial." Fed.R.Civ.P. 26(b)(1) advisory committee's note (1970 Amendment).

Discovery does have ultimate and necessary boundaries, *Oppenheimer,* id., at pg. 351, 98 S.Ct. at pg. 2389. The scope of permissible discovery is first limited by the requirement of relevance. Although "relevance" is broadly defined in the context of discovery, it is not error to deny discovery when there is no issue of material fact, *Wyatt v. Kaplan,* 686 F.2d 276, 284 (5th Cir.1982). Obviously, discovery of matter not "reasonably calculated to lead to the discovery of admissible evidence" is not within the scope of Rule 26(b)(1), *Oppenheimer,* supra, 437 U.S. at pg. 351–52, 98 S.Ct. at pg. 2389–90. Thus, it is generally "proper to deny discovery of matter that is relevant only to claims or defenses that have been stricken, or to events that occurred before an applicable limitations period", *id.,* at pg. 352, 98 S.Ct. at pg. 2390. In deciding whether a given discovery request falls within the allowable scope of discovery, a

court should not "blind itself to the purpose for which a party seeks information", *id.*, at pg. 353, n. 17, 98 S.Ct. at pg. 2390, n. 17. Thus, discovery should be denied when the purpose of the request is to gather information for use in proceedings other than the pending suit, or when a party's aim is to delay bringing a case to trial or to embarrass or harass the party from whom he seeks discovery, *id.*

This post complaint conduct objection is founded in part upon the premise the information is not relevant, because the check kite occurred *after* the complaint was filed.

As previously noted, there is no per se rule barring discovery regarding events which occur after an action is filed. As discussed above, the relevancy requirement of Rule 26(b)(1) has been construed broadly to encompass "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issued that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, id., at pg. 351, 98 S.Ct. at pg. 2389. In a post complaint conduct discovery dispute on point, Judge Arthur Burnett noted the scope of discovery in a civil RICO action must be governed by the nature of the litigation and the issues involved, *King v. E.F. Hutton Co.*, 117 F.R.D. 2, 7 (D.D.C.1987). In overruling an objection similar to the one made by the at bar Defendants, Judge Burnett simply stated the obvious: "Artificial restrictions should be rejected", *id.* Although *King* has never been cited for these propositions by another court (this could result from the fact that the case's headnotes fail to reflect the holdings in the opinion, thereby precluding most courts from even finding the case), its facts are strikingly similar to those presented by this case.

In *King v. E.F. Hutton & Co.*, the plaintiffs in a civil RICO action sought to compel production of documents which had been created by the defendants after plaintiffs had filed their lawsuit, *id.*, at pg. 4. The plaintiffs additionally sought to discover information regarding the defendants' current customers and prospective customers, other than the plaintiffs. The defendants in *King* objected to these discovery requests "solely on the basis that they pertain to events occurring ... after January 23, 1986, the date of the filing of the complaint in this case", *id.*, at pg. 7. Judge Burnett flatly refused the defendants' logic and characterized the proposed limit as an unacceptable artificial restriction on the scope of discovery.

In rejecting the defendants' objection, Judge Burnett noted, "documents which bear a date after the filing of a complaint may relate to events occurring prior to the filing of the complaint bearing on central issues in this case", *id.* He added, "[t]he continuation of a course of conduct, involving false representations or other culpable wrongdoing after a complaint, may have evidentiary significance", *id.* Judge Burnett concluded the information sought to be discovered by plaintiffs was relevant, because "[t]he civil RICO cause of action with reference to the 'pattern' requirement, ... may be proven, in part, by subsequent events and documents", *id.*

A number of analogous cases involving discrimination claims have addressed the relevancy of subsequent events and documents. Their resolution of the issue tends to support Judge Burnett's reasoning in *King*. It appears well established plaintiffs in Title VII discrimination cases should be permitted a very broad scope of discovery, e.g., *Morrison v. City & County of Denver*, 80 F.R.D. 289, 292 (D.Colo. 1978); see *Rich v. Martin Marietta Corp.*, 522 F.2d 333, 343 (10th Cir.1975). The scope of discovery in an EEOC case is extensive. The justification for expanding the scope of discovery is based on this consideration; since direct evidence of discrimination is rarely obtainable, Title VII plaintiffs must rely on circumstantial evidence. Any evidence of an employer's overall employment practices may be essential to plaintiff's prima facie case, *Morrison*, supra, at pg. 292.

*Trevino v. Celanese Corp.*, 701 F.2d 397 (5th Cir.1983), is a Title VII employment discrimination case. The plaintiff sought to discover extensive information regarding the defendant's past and present employment practices. The trial court limited dis-

covery to the two-year period preceding the filing of plaintiff's suit, *id.*, at pg. 404. In reversing, the Fifth Circuit referenced the need for an expanded scope of discovery in Title VII cases and added, "[t]he imposition of unnecessary limitations on discovery is especially frowned upon" in such cases, *id.*, at pg. 405–06. The court reasoned much of the information sought to be discovered by plaintiff "would be highly relevant *in proving a continuing pattern* of discrimination in an intergrated enterprise's promotion and transfer system", *id.*, at pg. 405 (emphasis added).

RICO claims require proof of criminal activities. Disparate treatment cases involving employment questions involve intentional discrimination, *Anderson v. City of Bessemer City*, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). Thus, both type of cases involve an animus element. Policy would dictate in RICO as in employment cases Plaintiffs be permitted to uncover motive and animus even if prospectively committed.

Cases denying discovery of subsequent events and documents typically involve the Court's finding the party seeking such discovery has failed to establish either the existence or the relevance of the information sought. In *Daly v. Sprague*, 675 F.2d 716 (5th Cir.1982), cert. denied, 460 U.S. 1047, 103 S.Ct. 1448, 75 L.Ed.2d 802 (1983), a medical school professor brought a Title VII action based on the temporary suspension of his clinical privileges, *id.*, at pg. 720. The trial court refused to allow discovery of events occurring after the filing of plaintiff's suit, *id.*, at pg. 723. On appeal, the Fifth Circuit found the plaintiff had failed to establish how events occurring after the filing of suit were relevant to the past removal of his clinical privileges, *id.* The court concluded, "[t]he denial of Daly's requested discovery of events occurring after the filing of the suit was not an abuse of discretion", *id.*, at pg. 724.

In *Klamath–Lake Pharmaceutical Assoc. v. Klamath Medical Service*, 701 F.2d 1276 (9th Cir.), cert. denied, 464 U.S. 822, 104 S.Ct. 88, 78 L.Ed.2d 96 (1983), the plaintiff in an antitrust suit sought to discover information regarding the defendant's business activities during the two years after the lawsuit was filed. The district court denied the request, *id.*, at pg. 1284. On appeal, the plaintiff argued it needed to examine post-complaint business records, because they were relevant to a pending motion for summary judgment, *id.* In refusing to find the trial court had abused its discretion, the Court of Appeals noted the plaintiff had not indicated specifically what it might expect to discover. The Court also noted the case had reached a point where the possibility of discovering additional relevant information was outweighed by the resulting injustice to the defendant, *id.*

The Defendants initially argued the information regarding the alleged check kiting scheme was not relevant under Rule 26(b)(1), because the plaintiff was neither involved in nor injured by the scheme. Defendant Goldston's latest written argument and authorities implicitly acknowledges the information regarding the check kite could tend to establish the existence of a "pattern of racketeering activity." However, Goldston contends such information is nonetheless not relevant, because the Fifth Circuit does not currently require proof of a "pattern" in civil RICO cases.

Goldston's conclusion claiming the check kiting scheme is not relevant does not logically follow from the two premises upon which the argument is based. They first note, to maintain a civil RICO cause of action, a plaintiff must have been personally injured by the defendants' conduct, and second, the at bar Plaintiff was not injured by the alleged check kiting scheme. Based upon these premises, which can both be accepted as arguendo true, Goldston concludes the information regarding the check kite is not relevant, because it could not be made the basis of a civil RICO cause of action by Plaintiff. Evidence of civil RICO defendants' conspiratorial conduct can be relevant in establishing the existence of an "enterprise" and a "pattern of racketeering activity," despite the fact the activity injured persons other than the plaintiff attempting to use the evidence.

In *King v. E.F. Hutton & Co.*, supra, the subsequent events and documents which the plaintiffs sought to discover pertained to the brokerage firm's handling of accounts other than the plaintiffs'. In addressing the question of whether the defendants' activities which neither involved nor injured the plaintiffs were relevant for purposes of discovery, Judge Burnett noted the "pattern" requirement of a civil RICO cause of action required evidence indicating the defendants had engaged in similar endeavors in the past or they were engaged in other criminal activities, *id.*, at pg. 8–9, n. 11. Reasoning the defendants' activities regarding other accounts would tend to show the existence of more than one scheme, and thereby establish a "pattern," Judge Burnett concluded the "evidence of activities as to other accounts and how they were handled would be highly relevant and discoverable to establish a civil RICO claim", *id.*, at pg. 9, n. 11.

Other courts have expressed similar reasoning. In *Papagiannis v. Pontikis*, 108 F.R.D. 177, 179 (N.D.Ill.1985), the court stated the "perpetration of fraudulent activities on more than one victim, while following the same modus operandi, is indeed a pattern for RICO purposes .... each victim can sue a RICO violator, adducing evidence of the offense against the other victim to meet the proof requirement of the statute as to a 'pattern.'" Likewise, in *SJ Advanced Technology & Mfg. Corp. v. Junkunc*, 627 F.Supp. 572, 577 (N.D.Ill. 1986), the court held that separate acts of fraud committed against different persons can constitute a "pattern" for RICO purposes.

 The new argument on the issue of relevancy contends if the check kiting scheme is relevant to show the existence of an "enterprise" or a "pattern," it is nonetheless outside the scope of permissible discovery. As to the informations' relevancy on the "enterprise" element, Defendants argue the element appears to be capable of proof by means other than the use of an extraneous offense (the check kiting scheme). Regardless of whether this contention is true, it is insufficient to justify denying Plaintiff the right to discover otherwise relevant information regarding the check kiting scheme. The mere fact there is more than one source of relevant information on a given issue does not per se require the Plaintiff to pursue the avenue of discovery which is most convenient or least embarrassing to the defendant.

The heart of the latest argument is based on the contention the Fifth Circuit does not *currently* require proof of a continuous "pattern" in civil RICO cases. This argument is tenuous at best. It is correctly noted the Supreme Court has strongly suggested that "continuity plus relationship" is required in civil RICO actions, see *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). The *only* reason the requirement has not been recognized in the Fifth Circuit is because of a contrary holding by a panel, see *R.A.G.S. Couture, Inc. v. Hyatt*, 774 F.2d 1350, 1354 (5th Cir.1985).

In *Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 855 F.2d 241, 243 (5th Cir.1988), the court found every other circuit required proof of a "pattern of racketeering activity" and several Fifth Circuit panels have been critical of *R.A.G.S.* The court stated, "[i]n our view, the criticism is warranted," *id.*, at pg. 243, n. 3, but added, "[a] request to reconsider *R.A.G.S.* can only be made to the entire court sitting en banc, not to another panel," *id.*, at pg. 243. In view of these comments, it is obvious the rule of R.A.G.S. may be short-lived. Defendants recognize this in their brief when it is opined, "the Fifth Circuit would be eternally grateful for the opportunity to clean up *R.A.G.S.* before some lawyer in another Circuit asks the Supreme Court to decide which of the Circuits are correct." It is precisely this which undermines the Defendants' argument on this issue.

The term "pattern of racketeering activity" is defined in 18 U.S.C. 1961(5). That Statute requires "at least two acts of racketeering activity". It further requires one of them must have occurred after the effective date of the Statute and the last must have occurred within ten (10) years of the initial act. The Supreme Court in a

left-handed fashion spoke on this issue in a footnote in *Sedima,* supra, 473 U.S. at pg. 496, n. 14, 105 S.Ct. at pg. 3285, n. 14, as follows,

"As many commentators have pointed out, the definition of a 'pattern of racketeering activity' differs from the other provisions in § 1961 in that it states that a pattern '*requires* at least two acts of racketeering activity,' § 1961(5) (emphasis added), not that it 'means' two such acts. The implication is that while two acts are necessary, they may not be sufficient. Indeed, in common parlance two of anything do not generally form a 'pattern.' The legislative history supports the view that two isolated acts of racketeering activity do not constitute a pattern."

The Supreme Court, id., set out the four (4) requirements of a violation of 18 U.S.C. 1962(c). The Supreme Court said the Plaintiff must allege and prove, (1) conduct (2) of an enterprise (3) *through a pattern* (4) of racketeering activity. For whatever reason the Fifth Circuit in *R.A.G.S. v. Hyatt,* supra, at pg. 1352, chose to restate in convoluted form the four (4) basic requirements of a RICO claim. The Fifth Circuit said to prove a violation the Plaintiff had to allege and prove (1) an enterprise existed that affected interstate commerce; (2) the defendant was associated with an enterprise; (3) the defendant participated in the conduct of the enterprise's affairs; and (4) the participation was through a "pattern of racketeering activity". The Court went further and said a pattern of racketeering activity is "at least two acts" indictable under State and Federal criminal laws. Therefore, the safer course is to assume the Statute means what it says. The Supreme Court likewise knew what it was talking about when it said there had to be a "pattern". The pattern has to be one of racketeering activity. The Statute says two (2) or more with the Supreme Court indicating on some occasions two (2) may not be sufficient to prove a pattern. Thus, the ultimate conclusion is the safest course is to find, at least for purposes of discovery, all acts of the enterprise engaged in the racketeering activity which would indicate the pattern, whether they occurred

prospectively or retrospectively from the date the lawsuit was filed.

The Defendants' argument attempts to define relevance in terms of a prima facie case, which is not supportable. The phrase "relevant to the subject matter involved in the pending action" encompasses any matter bearing on, or which reasonably could lead to other matter that could bear on, any issue that is or may be in the case, *Oppenheimer Fund, Inc. v. Sanders,* supra, 437 U.S. at pg. 351, 98 S.Ct. at pg. 2389.

The Defendant, Fred Goldston, has made a sort of footnote contention this discovery should not be permitted as it has a direct affect on his ability to defend this lawsuit. His claim is from this point forward if discovery of the check kiting scheme is permitted, he individually and perhaps the two (2) corporations will be forced to claim their Fifth Amendment privilege against self-incrimination. Such an argument in a RICO case is not tenable. While not intending to be insulting, the argument is ludicrous and ridiculous.

It must be kept in mind one (1) of the predicate acts must be shown to reach the level of a racketeering activity, 18 U.S.C. 1961. There is no doubt what those predicate acts under RICO constitute. In *Sedima v. Imrex,* supra, the Supreme Court made it plain and clear.

(473 U.S. at pg. 481, 105 S.Ct. at pg. 3277) "RICO takes aim at 'racketeering activity,' which it defines as any act 'chargeable' under several generically described state criminal laws, any act 'indictable' under numerous specific federal criminal provisions, ..."

(At pg. 488, 105 S.Ct. at pg. 3280) "..., the predicate acts involve conduct that is 'chargeable' or 'indictable,' and 'offense[s]' that are 'punishable,' under various criminal statutes. § 1961(1). As defined in the statute, racketeering activity consists not of acts for which the defendant has been convicted, but of acts for which he could be."

Thus, it is overtly apparent not only from *Sedima, id,* but also from the Statute itself the only way in a civil RICO claim you can

get in Court is to show the defendants have committed indictable criminal acts. At the moment of filing the self incrimination issue is confronted. If the arguments of Goldston and his corporations were applied to prevent the discovery presently sought in this case on the grounds of having to claim the Fifth Amendment, then no civil RICO claim could go forward until all of the necessary criminal Statutes of Limitations had run. The reason is because the claim is only sustainable if there are those criminal predicate acts. Therefore, this Fifth Amendment argument is not sustainable to stop discovery.

■ It is, therefore, found the alleged check kiting scheme which is avered to have occurred in August–September, 1988, is relevant under the proof of a "pattern" of racketeering activity. It is discoverable.

It is, Ordered that the Motions for Protective Orders are in all things overruled and denied.

It is, further, Ordered the Defendants, and each of them, who have been served with Interrogatories and/or Requests for Production of Documents are required to comply with those Requests for Production and answer those Interrogatories within thirty (30) days after the receipt of this Order.

Any party aggrieved by this ruling may appeal to the United States District Judge assigned to this case, Miscellaneous Order No. 6, Rule 4 Review and Appeal, (b)(1) Appeal of Non–Dispositive Matters—28 U.S.C. 636(b)(1)(A), of the United States District Court for the Northern District of Texas. To obtain such review, specific objections must be filed within ten (10) days after receipt of this Order, pursuant to 28 U.S.C. 636(b)(1)(A), and Rules 6(a) and 72(a), Federal Rules of Civil Procedure.

NO RECONSIDERATION OF THIS ORDER WILL BE MADE BY THE UNDERSIGNED U.S. MAGISTRATE.